at all? Melissa, isn't 20-3436 going to be submitted without argument? Yes, it is. I did read that. Okay, I missed it. Well, very good then. Good morning, everyone. Sorry you can't be with us in the room, but remote has been working pretty well and let's all do our best to keep it that way so we get a good argument record. Mr. Mitchell, the court is ready when you are. You're muted, I believe. I'm sorry, your honor. Can you hear me now? Yes. All right, my apologies. May it please the court. Answer me all the time. All right. Property that has been taken in violation of another's constitutional rights must be returned. Even if the defendant took the property in good faith and even if the defendant took the property in reliance on a statute, it must be returned to the court. This court can assume the existence. Counsel, I have to stop you there because it seems to me that historically, Third Circuit Judge Fischer's concurring opinion makes a good case that that's not categorically true. There have been exceptions known to the common law and inequity in the 19th century and before. What's your response to Judge Fischer's concurring opinion? At common law and equity, we're not dealing with situations in which the Supreme Court has established something as a constitutional right under 42 U.S.C. section 1983. And in this case, and in the other cases, including the case before Judge Fischer, with all respect, there's a federal statute that requires a remedy in response to the violation of constitutional rights that has been alleged. So the question becomes, is there a type of good faith that can overlay the statute, which read alone requires payment of damages in response to a violation of the Constitution that can somehow either trump or maybe in perhaps the view of the union, be something that the statutory text is read against the background of. And there's simply no background consistent principle of law where an entity that has acted in good faith yet nonetheless violated the constitutional rights of a victim is allowed to keep the property if the victim is suing for the return of property. There may be situations in which the defendant can claim an immunity from damages. But what about the financial transaction cases that Judge Fischer reviews? Those did not involve a situation, Judge Loken, in which the defendant was trying to keep the property that was innocently but wrongfully taken. Well, certainly, well, if it was a financial transaction and property changed hands, the defendant got something. But it wasn't cases. Well, I guess you're responsive, but you're not dealing with the issue as defined by Judge Fischer. Well, all these cases are distinguished. Can I read, shall I read his holding on that? Please, yes. Back with my brown material. A contemporaneous exception to the general rule that an unconstitutional act is not a law and is void. In which a judicial decision either voiding a statute or overruling a prior decision does not generate retroactive civil liability with regard to financial transactions or agreements conducted without duress or fraud in reliance on the invalidated statute or overruled decision. Now, to me, that's right on point here. We respectfully disagree, Your Honor, because this is not a voluntary transaction that was entered into. The union took the money from the client's paychecks without their consent. And this is no different from the situation in the United States against Windsor where a person was taxed improperly based on a federal statute that was considered constitutional at the time, the Defense of Marriage Act. It was later ruled unconstitutional. And the unconstitutionally collected taxes had to be returned. What Judge Fischer is describing are situations in which voluntary transactions were entered into in reliance on a statute or a legal regime at the time that was believed to be constitutional and later is declared unconstitutional. That's certainly true with respect to Pekarsky. Mr. Pekarsky was initially- For his pre-resignation due, that's fair chance fees that he wants back now. That's correct. But Mr. Pekarsky is not seeking a refund of the fees that he paid at the time when he was a voluntary and enthusiastic member of the union. When he resigned in- I thought he was. He was prior to 2017. In 2017. I thought he wanted them all back. He's not seeking refunds before 2015. When he was an enthusiastic union member, he was a leader of the union, he's not seeking a refund for any of that stuff. He voluntarily joined. He paid the full amount of dues voluntarily. Not just that, he paid them enthusiastically. When he became disillusioned with the union and sought to resign and become a fair share of fee payers, the union would not accept his resignation. So it's a different situation from what Judge Fischer is talking about. Mr. Pekarsky wanted out of the union. He tried to resign. They wouldn't accept his resignation or they claimed he wasn't resigning properly. They had- He had to fill out certain types of paperwork and jump through certain hoops. And he's trying to get a refund of money that he claims was improperly taken from his paycheck even prior to Janus. So even under the regime of Abood, Mr. Pekarsky is alleging that money was improperly withheld. But the principle that we're relying on, Judge Loken, is not nearly as broad as what Your Honor is suggesting. It's a narrow claim that we're making. A litigant who acts in good faith but wrongfully takes another's property, even if it's innocent, even if it's in reliance on a statute that was believed to be constitutional at the time, still has to return the wrongfully taken property if the plaintiff sues for its return. And the right analogy here is United States against Windsor, where taxes paid in reliance on the Defense of Marriage Act had to be returned. The search of Congressman Jefferson's office, which was done based on an invalid search warrant, that would give the officers qualified immunity because they searched his office in good faith, but they still had to return the documents that were improperly seized from Congressman Jefferson's office. And then also in Wyatt against Cole, the Fifth Circuit case that is heavily relied on by the unions for establishing the idea of a good faith defense, when property was taken in reliance on that replevant statute that was only later declared unconstitutional, no one thinks that they should be allowed to keep the property that they improperly took, even though they took it innocently and even though they took it in good faith. So the point is that good faith will not allow a defendant to escape a restitutionary remedy, even though it will often confer an immunity from compensatory damages and certainly an immunity from punitive damages. But no one gets a windfall for violating another person's constitutional rights, even if the violation of the Constitution occurred in good faith and even if it occurred in reliance on a statute that was reasonably believed to be constitutional at that time. If I could, Your Honors, I'd like to pivot to the specific facts of some of our clients because there's the broader principle that Judge Loken mentioned at the outset, but then there's also the issues of how they apply to the unique factual circumstances of the four individuals in these two consolidated cases. The situations with Burroughs and Pekarsky are slightly different from the situations involving Hokeman and Hanson, because Hokeman and Hanson were non-union members who were compelled to pay agency fees against their will prior to the Supreme Court's ruling in Janus. Burroughs and Pekarsky, by contrast, were union members rather than agency fee payers. And the unions claimed that because they were members that they voluntarily agreed to pay the full amount of union dues so that they cannot, in the union's view, establish a compelled subsidy of speech claim. What case supports your claim as to union members, your constitutional claim, not Janus? No, what Janus supports is that you cannot be compelled to pay the union against your will. Janus invalidated closed shops? Janus invalidated agency shops where the choice is either pay the union or resign. And the holding of Janus is for a closed shop, you have to be a member. Closed shops were unconstitutional even prior to Janus. Even under the Abood regime, you couldn't be forced to join the union as a condition of public employment. Closed shops were still legal in the private sector. But even prior to Janus, you could not force membership as a condition of public employment. You could force the mere payment of agency fees. Janus put an end to that. The situation with Burroughs and Pekarsky were they joined the union prior to Janus. And the union's claim is that because they joined, they voluntarily paid full membership dues. Therefore, we don't have a compelled subsidy of speech claim because they paid the money voluntarily. That's not correct. Burroughs and Pekarsky voluntarily chose to pay the difference between full union membership dues and the agency fees they would have had to pay if they had stayed out of the union. Everyone had to pay an amount equal to the agency fee. Whether you joined the union as a member or not, everyone had to pay as a condition of employment. The only choice that Burroughs and Pekarsky had was whether they would pay the additional increment, the difference between full membership dues and the compulsory agency fee that everyone had to pay in exchange for being a member of the union. So that part they can't recover. We acknowledge that. They voluntarily paid that differential between the full membership dues and the amount equal to the agency fee. But everyone had to pay the agency fee whether you joined the union or not. They were compelled to pay that as much as everybody else. Now, the other claim that the union is making with respect to Ms. Burroughs is that she signed a membership application that union dues, even if she were to resign her membership, unless she resigns during a seven-day window that comes up once a year. These are called maintenance of dues agreements. And she signed this prior to Janus. So when she tried to get out, she quit the union in August, early August of 2018, shortly after Janus. But the union said, we're still going to tap your paycheck until that seven-day window comes around in late September. And then you have to resign during that window and revoke your commitment to pay membership dues in that period of time. So they kept on tapping her paycheck until the end of September, even though she quit the union in August after Janus gave her the right to leave and no longer pay the union. The question for this court is whether Ms. Burroughs was under some contractual obligation to continue paying the union even after she resigned and even after Janus gave her a constitutional right to withhold payments from the union. And the problem with the union's argument is that Burroughs never signed a contract. We agree with the union that constitutional rights can be waived. I think everyone accepts that proposition. Plea bargaining is probably the best example of this, but very few constitutional rights are inalienable. They can never be waived by contract. The rights under Janus are not one of the inalienable rights. They can be waived by rules that Janus establishes for a waiver of First Amendment rights. And the first problem is the membership application is not a contract. A contract has to be supported by consideration. And if you look at the text of that membership application that Ms. Burroughs signed, and we quote the full language in our opening brief, there is nothing in the text of that document that promises Ms. Burroughs anything in response for this unilateral commitment that she made to continue paying the union after she resigns her union membership. So without consideration, there is no legally enforceable contract. And the union cannot rely on that to justify its refusal to promptly implement her decision to resign in early August of 2018. So those subsequent paychecks where her money was diverted to the union was done in violation of Janus, which had already been decided. Is that a constitutional consideration argument or are you just going on the basis of contract common law? This is basically just contract common law. There has to be a contract in order for there to be a waiver of the constitutional right. We acknowledge that constitutional rights can be waived. The union has often accused us of saying that Janus is somehow an inalienable or unalienable right that can never be waived by contract and that we're trying to renege on a contractual commitment. I understand. I just wanted to make sure that you're talking consideration as we've known it since law school. That's correct. It's the same principles that would apply in any other contract case. The only difference here is that one of the things that's being bargained over is a constitutional right, but that shouldn't change the analysis on consideration. Same thing with plea bargains. Plea bargains have consideration in them where a criminal defendant waives his constitutional right in exchange for lesser charges or in not to do something. We just don't have anything in the document that shows what Ms. Burrow has promised in exchange for the supposed commitment that she made to continue paying dues. The test for consideration is, is it possible to imagine a way in which the union could have breached this so-called contract? If it's not possible to breach the contract, then there's no consideration. There's no way the union could have breached this membership application that Ms. Burrow signs because there's nothing that the union promises to Ms. Burrow. There's nothing that the union could do that could expose itself to breach of contract liability if they were to expel Ms. Burrow from the union or do anything else to Ms. Burrow. There's just nothing set out in the document itself that could qualify as consideration. The other problem with the union's argument is that the membership application needs to meet the standard for waiver of constitutional rights that was set forth in Janus. Ms. Burrow resigned her membership after Janus came out and Janus says that waivers of First Amendment rights in the public employment context may be done, but they have to be freely given and they have to be shown by clear and specific evidence. We don't have in this situation a freely given waiver of Ms. Burrow's right because she signed this membership application when the agency shop regime was still in place, when she had to either pay the union or not be a public employee. Were these dues that were taken after Janus taken pursuant to a state statute or were they taken pursuant to the union's claim that she was still under some kind of contract? It's the latter, Judge Carleton. What would be the state action then? The state action would be the fact that her public employer diverted the money from her paycheck to the union at the union's request. So the state employer had to be involved in implementing this supposed contract, and again we deny that it's a contract, but the state employer was the one that kept withholding the money from her paycheck against her wishes and put it in the union's coffers. So we have state action even if there's not a constitutional state statute compelling this type of diversion. Any type of agreement between the union and the employer to divert money from employee paychecks is something that qualifies as state action. I stand into my rebuttal time and I'd like to save five minutes if I could. I'm happy to answer the court's questions. Am I right, we're just talking about six or seven It is six or seven weeks between the time she resigned in early August and by the time she was finally let out, but there were only I think two or maybe three paychecks that were tapped because she wasn't getting paid over the summer. So it's a short window of time both with respect to the failure to accept her resignation and also an even shorter period of time with respect to the time in which her wages were being diverted against her will. Well on the state action question though, if the state is just responding to a private decision of the union and there's no compulsion by the state, does that make a difference for state action purposes? I don't believe it does Judge Carlton because that argument with all respect in our view proves too much because it would suggest that the union could just demand that a state employer disregard Janice with impunity and if the state employer is diverting wages then there's no state action under section 1983. The involvement of the state employer in taking the money from the employee's paycheck and sending it to the union is state action and that is what gives Ms. Burroughs a cause of action under section 1983 because the union and the state are acting together under colorist state law. The union and the state employer or it could be a municipal employer but some type of state entity have an that wages will be diverted from the paychecks of public employees to the union either on the union's request, maybe it's pursuant to an agreement between the union and the employee, maybe it's pursuant to a statute but none of that matters because the state employer is still involved in diverting the wages and that's all we need to get us past the state action hurdle and past the under colorist. Your best case for that proposition? I would say Janice honestly, Janice doesn't discuss the state action issue. Anything else on this state action because your notion of sort of neutral participation of some state actor in transaction between private parties satisfying the state action test, that doesn't sound right to me. As long as the state is doing something to the paycheck of the public employee. Best case besides Janice for that proposition. I don't know if there's a case post Janice that's explicitly held that that's enough. That has to be post Janice other than Janice. The cases that we would cite would be the cases like Richardson that set forth the basic requirements, the two-part test for state action, right? Is there involvement of state officials? Is there state action under the traditional test for state action doctrine? That is what we would suggest is our best authority. It doesn't specifically deal with this question, but it sets forth the basic test that's to be applied to this type of situation. How about Blum against Uretzky? Does that go the other way? Are you familiar with that case? No, I'm sorry, your honor. Could you remind me? That's all right. No, it's not worth dwelling on if you're not familiar with it. It's all right. And if I could, I know I'm well into my rebuttal time, but I would like to preserve some time. So I think I should stop here unless the court has additional questions. Thank you, your honors. Very good. Let's see. Mr. Pitts, are you next? I am. Good morning, your honors. Casey Pitts for the defendants appellees in the Hochman case. I'll start by addressing the good faith defense and then we'll address Ms. Burroughs claim for a refund of union membership dues. I will not address plaintiff's appeal of the district court's order taxing costs unless the court has specific questions on that issue. In this case, the district court, like every other court to have considered the question since Janus, including now seven other circuit courts, held that unions that received and expended agency fees prior to Janus in reliance on state law and then binding Supreme Court precedent cannot be held monetarily liable under section 1983 for having done so. That outcome follows directly from the Supreme Court's decision in Lugar versus Edmondson Oil Company. Although the focus of section 1983 in the constitution itself is protecting private parties from their government, Lugar held for the first time that private parties could be sued under section 1983 for invoking certain state created procedures. The Lugar court recognized that its interpretation of section 1983 created what it called a problem, namely that innocent private parties could face monetary liability for their reliance on state laws subsequently deemed unconstitutional. And the Lugar court concluded that this problem should be addressed through recognition of an affirmative good faith defense. There is now a broad and unbroken consensus in the lower courts recognizing the defense and the facts here present the strongest possible circumstances for its application given that the union both relied on state law and then providing representation to everyone in the represented bargaining units, including plaintiffs themselves. The Supreme Court has emphasized that in determining what defenses and immunities are available to litigants sued under section 1983, the starting point is the background common law as it existed in 1871. And the proper question in undertaking that analysis is would the conduct at issue have given rise to strict liability at common law in 1871? In other words, would a party who engaged in conduct like the conduct that's alleged in the section 1983 claim have been unable to assert good faith or any other defense of that sort at common law? And would have Congress expected that party to face strict liability? Here, as every court to consider the issue has recognized the background common law principles strongly support recognition of a good faith defense. That the recognition starts with Wyatt itself in which Justice Kennedy emphasized that reliance on a state law that has not yet been struck down is presumptively reasonable. Furthermore, as Judge Sutton and his colleagues in the Sixth Circuit recognized in the Ogle case, the recognition of the good faith defense here is appropriate because the claims here are quite analogous to common law abusive process claims here. As the court is aware from the briefing, abusive process involves the misuse of an otherwise permissible process towards an impermissible end. That was the common law tort and it required malice and objective unreasonableness. Here, the claim is under state law to a constitutionally impermissible end, namely to support their expressive activities. Janice held that that was an impermissible end. And that's the reason that abusive process is deeply analogous to the claim here and supports recognition of the good faith defense. Further, as Judge Loken noted, there's a separate body of law that Judge Fisher identified in his diamond concurrence that provides even more support for recognition of the good faith defense, which is that where parties entered into transactions on the basis of statutes that had not yet been invalidated, the courts generally did not undo those transactions after the fact. Mr. Mitchell, primary response... If they were financial. If they were financial. I don't think those cases would have applied to the unconstitutional seizure of property where the seizing officer gets qualified immunity and then says, I ain't giving your gold rings back. Well, the question of the right of the return to property is simply not the question in a case, in the Section 1983 case, for example. For example, in a procedural due process case, the question of who is entitled to the property at the end of the case is determined by state property law, not as a matter of remedies under Section 1983. More fundamentally, there's no question that what we're dealing with here... Counsel, we see a lot of 1983 cases suing for return of property. Well, and if it's a takings claim, for example... They're Fourth Amendment grounded. They're not all substantive due process grounded. And there are property rights established by the Constitution in which the remedy is proper. But regardless, there's no question here that we are dealing with finances. We are dealing with money. We are dealing with a transaction that was entered into between the union and the members and non-members on the basis of a statute that had not yet been invalidated. So that's directly comparable to what Judge Fischer was addressing in his opinion. And as Mr. Mitchell's only attempt to distinguish that was on the basis of the voluntariness of the transaction. And that distinction doesn't work. As Judge Fischer noted, the kind of coercion necessary to overcome that principle under the common law was where the money was provided on threat of seizure of a person's body or property. It was coercion because the party on the other side, generally a government party, had the right to seize the property or person. And the money was given in order to avoid such a seizure. There's no question that that happened here. Here each of these individuals actually voluntarily accepted public employment with an understanding at the time that they did so that payment of agencies would be a condition of their employment. So they didn't face the kind of coercion that could obviate the principles recognized in Judge Fischer's opinion. Furthermore, I will also say it's also clear that Judge Fischer's opinion, as you noted Judge Loken, effectively destroys the theory, the sort of property theory that is the primary theory being pursued in this case. It demonstrates that the common law did not contain some universal principle that property taken must be returned. In fact, the common law took a much more nuanced approach to that and recognized in circumstances like this that money generally would not be returned and the financial tractions would not be undone. And it is also clear in this case, as every court to consider this issue has recognized, that this is not a case for the equitable return of property or the restitution of property. The plaintiffs here are seeking an award of funds from the union's general assets. And the United States Supreme Court in the Montanil case and this court in the Dakota claim for damages, not a claim for the restitution of property. And so that's dispositive of their claim that they are pursuing a claim for the return of property here. Every court to consider this has properly recognized that under the well-established principles distinguishing legal damages from equitable remedies like restitution, the claim against the union's general treasury for the return of funds that have been expended, by definition they were required to be expended under the Hudson regime that existed before Janus, that that is a claim for the return of property. Unless the court has further questions on the good faith defense, I will turn to Ms. Burroughs' separate claims for a return of her union membership dues. Those claims fail for two There is simply no state action here with respect to those claims sufficient to trigger section 1983 liability. The core question in determining whether there is state action, the first and fundamental question is what is the source of the dispute at issue? What is the choice at issue? Here the source of the dispute and the choice at issue is the agreement between Ms. Burroughs and the union where she agreed to pay union membership dues and agreed to do so for a defined period of time even if she should resign from the union prior to the expiration of that time. That is the source of this dispute. It's a private agreement. It is not a, she is not challenging something that can be properly characterized as a state policy as is necessary under the first prong of the Lugar v. Edmundson oil test to determine whether someone is a state actor. As Judge Colleton noted, the Blum v. Uretsky case and I would also note the American Manufacturers Mutual Insurance Company v. Sullivan case both recognize that the kind of ministerial response to private actions by the government at issue here does not constitute state action for purposes of section 1983. The Sullivan case is particularly informative because in that case the Supreme Court for purposes of the second prong of Lugar oil about whether a private party like the unions here can be characterized as a state actor says is there such a relationship between the private party and the government that the choice at issue can be characterized as the parties. And here the choice at issue is the choice made by the union and Ms. Burroughs when she entered into her agreement to continue paying union dues and to continue doing so for a defined period of time even should she resign prior to the end of that time. That choice is a private choice between those private parties and does not constitute state action. So do you think she would have some sort of contract claim against the union then if she were correct on the impropriety of the deductions? She may have a state law claim if she claimed if she believed that they were taken and that she that she was not contractually obligated to pay them. She may also be able to pursue a claim before Minnesota's public employee labor relations entity. You know a claim under per law for an unfair labor practice. These are matters of state law to be determined by the state in the context of both its law of contracts and its law public employee labor relations. They don't give rise to constitutional claims under section 1983. But I want to be clear that even if there were state action here there wouldn't be a first amendment problem which is the second problem with Ms. Burroughs claim. Mr. Mitchell primarily content he acknowledges that claim that these rights can be waived and that a contractual commitment to pay union dues is binding and constitutes a valid way for a first amendment rights but contends that there is no waiver here. And that's that's simply wrong. First with respect to whether there is consideration to support this agreement. Ms. Burroughs admits that she received the benefits of union membership in exchange for her payment of union membership dues. Every court to consider those question that question both in the context of these kinds of post-Janus claims and in other contexts including lawsuits against unions for violation of members contractual rights has recognized that the relationship between a union and its members is contractual and that there is a contractual agree contractual relationship between both. And in fact if Ms. Burroughs had been denied her contractual rights she would have rights to enforce the unions her her rights as a union member in court or before Minnesota's public employee labor relations authority. So so he's simply wrong to say that there's no consideration here and indeed Minnesota law is clear that where the parties have an existing agreement and then replace it with a new agreement there is not a requirement for separate or new consideration that they've essentially chosen to continue their relationship on the basis of this new agreement and that's sufficient to constitute to constitute an agreement. Further there's no additional waiver that's required under Janus or other under any other principle. Plaintiff Mr. Mitchell's intention is effectively that unions have to Mirandize. Let me just let me just ask you what occurs to me and I haven't read the record in this regard. I would assume that there was a grievance procedure involved in in either the collective bargaining agreement with the public employer or maybe even in recognized in the membership agreement and if if that's the case um then the union must have had procedural at least procedural if not substantive obligations in processing grievances and would those would those obligations have carried through to the period we're talking about? They would they would although the unions the union as the exclusive representative of the bargaining unit would have you know obligations to represent all members and non-members in certain proceedings um and I you know I don't know the details enough to know if some proceedings under Minnesota law where only members were entitled to a representation as for example in California only members are entitled to representation in statutory termination proceeding but I don't know if that's the case here. Here Ms. Burroughs received a number of member specific obligations that she would not have received were she not a member of the union that insurance benefits and and the like the right to vote in union elections to vote in contract ratification um these are matters that are rights of membership that she received in exchange for paying her union dues and that's sufficient contract um no further waiver was required the provisions of Janus cited by Mr. Mitchell simply set forth the unremarkable proposition that a waiver of rights can't be presumed all of the cases cited by the Janus court involved situations where courts were considering whether silence could be construed as a waiver of rights here the agreement she entered into is crystal clear Ms. Burroughs stated that she voluntarily agreed to pay union membership dues and that she would do so for a period of time even if she should she should resign prior to that time and it also set forth the specific process for her to revoke that authorization which she exercised as noted and I would get I'll pass on the remaining amount of my time to my colleague Ms. Ravindran. Thank you good morning your honor my name is Ramya Ravindran I represent the APLE AFSCME Council 5 in the Piekarski appeal and I'm going to focus just on the facts specific to Mr. Piekarski both to be non-duplicative and also because although he has brought a claim he's pled a claim that's similar to the one brought by Ms. Burroughs in the Huffman action the factual predicate of that first amendment claim was directly contradicted by the evidentiary record specific to Mr. Piekarski and so his claim fails at an even more fundamental level before even reaching the additional issues that are at issue in the other case so the Piekarski case involves just a single plaintiff Mr. Piekarski who was at all relevant times a member of the union he never paid any agency fees to the union instead he paid membership dues and in exchange he received membership rights which he took full advantage of throughout his time with the union as the record here showed Mr. Piekarski was an active member of the union regularly participating in the internal affairs of the union including at one time serving as the president of the local union which is an elected position only open to dues-paying members so his claim like the one brought by Ms. Burroughs is he's entitled to a refund of membership dues under the first amendment because he allegedly did not want to join the union and only did so because the other option at the time was to be a non-member agency fee pair and he allegedly never would have agreed to pay any money to the union in the absence of that agency fee requirement so that's the factual predicate of the first amendment claim but that predicate was contradicted by Mr. Piekarski himself in his deposition testimony in this case when he was asked whether his decision to join the union was based on the agency fee requirement he said no and instead what he testified was that he understood when he signed the union membership application that he was agreeing to become a union member and was authorizing the payment of membership dues from his paycheck he also testified that he understood that the membership rights that he was receiving in exchange for that payment of dues rights that he continuously exercised were only available to him because he was a dues-paying member and he knew if he switched to non-member status he would no longer have access to those rights and so as he testified even when his views of the union changed and he stepped down from his position as the local union president he made a conscious decision to remain a member of the union so that he would continue to have those membership rights and be able to participate in the internal affairs of the union which he did here and so what these facts establish is not only a voluntary choice but a purposeful choice to join and remain in the union and an agreement to pay membership dues in order to receive membership rights. That factual record refutes the fact the allegation the factual allegation that underlies the first amendment claims here which are the only claims that have been appealed and they're dispositive of those claims and so as long as Mr. Piekarski remained a member of the union the union was permitted to collect dues from him in exchange for continuing to provide him membership rights and benefits which it did here and what the evidence in the record is is that Mr. Piekarski remained a union member until August 13, 2018. That is the date that he submitted a signed request to terminate his membership. That document is in the record and it is the only document in the record with Mr. Piekarski's signature requesting termination of membership and he confirmed at his deposition that his dues payment stopped immediately upon submission of that document. So there's no constitutional violation that can be made out on these facts and the court can end its analysis there affirming the judgment in favor of Council 5. If there aren't any questions specific as to Mr. Piekarski... Thank you then I'll let the remainder of my 30 seconds go then. Well I'll give you 30 seconds. If we get to the mootness point how would you see a way around Campbell Ewald? Do you think the part in Campbell Ewald about depositing money into a guy's account would cover sending a check that he refuses to cash or how would you deal with Campbell Ewald? Right and I think actually the majority opinion in Campbell Ewald provides that explanation so the majority when they were distinguishing a case that was cited by the dissent there the San Pablo Railway Company case and what the court was looking at is saying well when you have an offer of judgment or a settlement offer that's rejected the plaintiff is then left empty-handed once that offer is rejected or the offer of judgment expires and they distinguish that from situation where an actual payment is made and so here it's there's no question Mr. Piekarski was that is not left empty-handed. Well I understand I understand but the the fact that they talked about depositing money into account makes me wonder if there's some distinction there between an uncashed check and money that's actually possessed by the by the person. Do you have any is there any authority after Campbell Ewald on this narrow question of a check? I'm sorry I don't think there's any so the the cases that are cited in the plaintiff's brief I'll deal with again someone who's left empty-handed so offers settlement offers that are rejected so here it's by Mr. Piekarski's own I mean he he has that it's his to do whatever he wants to do with that check and the fact that he has decided not to do anything with him doesn't change the if you look at again what has whether or not the plaintiff has been left empty-handed Mr. Piekarski has not. Okay thank you very much. Very good for rebuttal time I don't have got to get it pinned all right there we go you got Thank you Harris. I'll begin with Mr. Pitts's discussion of Judge Fisher's concurrence in this is an involuntary transfer of money as opposed to a voluntary transaction. Mr. Pitts makes a very plausible argument as a matter of first principles that we should view these agency shop arrangements as voluntary because after all these employees voluntarily joined the employment of a public entity at a time when they knew they would have to pay money to the union as a condition of their employment but that stance is hard to square with Janice itself. Janice called this a question that the employment was voluntary in the first place no one forced them to decide to work in a public sector agency shop but nonetheless Janice Janice tells that this is compelled and because Janice says that I don't think this can plausibly be considered a voluntary transaction either by Judge Fisher and his concurrence or by Mr. Pitts's remarks today and may I continue or do I need to stop here at the zero time's up yep all right well thank you Iris if you have further questions I'm happy to answer them but otherwise we'll rest on our brief thank you very good counsel the case is thoroughly brief and very well argued we will take it under advisement